36208.  INTERSTATE LIFE & ACCIDENT INSURANCE
COMPANY *v.* HULSEY.

DECIDED MAY 17, 1956—REHEARING DENIED JUNE 15, 1956.

*O. J. Tolnas, Preston M. Almand,* for plaintiff in error.

*Brannon & Brannon, Robert J. Reed, R. Wilson Smith, Jr.,* contra.

GARDNER, P. J.  1.  The evidence consists of stipulations and documentary evidence in the main.  Counsel for the defendant, while not abandoning any of the assignments of error, concedes

that he has endeavored to put the issues in the case in condensed form under five main heads. After carefully studying the whole record, in our opinion, able counsel for the defendant has very well covered all of the contentions he made in the record in the five heads. We will approach the case in the order of these five contentions.

2. (a) It is contended that the plaintiff did not prove that the motor launch was an integral part of the U. S. S. Kearsage. The petition was amended in conformity with the decision of this court in *Interstate Life &c. Ins. Co.* v. *Hulsey,* as reported in 82 *Ga. App.* 559. As amended the petition alleged that the launch in question on which the insured met his death belonged to the U. S. S. Kearsage, as a part of its equipage. The allegations of the petition must be construed to mean that if the insured met his death as a result of an accident to a motor launch which was an integral part of the U. S. S. Kearsage, his death would be compensable under the terms of the policy. Without going into details regarding the evidence as to this question, the trial court was amply authorized to find against the defendant on this contention. We might state in this connection, however, that Lt. John Keenan, U. S. Navy, stated by deposition that he was responsible for the ship's boats and that he was ordered by the commanding officer of the U. S. S. Kearsage to go to the boat pool at Norfolk Naval Base and draw motor launches; that he did so and that the motor launches were fifty-footers and the deceased Norris was riding on one of them when he met his death, and that witness signed the custody receipt for the motor launches and took charge, and such boats became the property and responsibility of the U. S. S. Kearsage from then on until they were returned to the pool. In addition to this, extracts from the proceedings of the Naval Board attached to the bill of exceptions in this case almost without exception refer to "the swamping of the U. S. S. Kearsage motor launch." To our minds there is no question that the motor launch was an integral part of the equipage of the U. S. S. Kearsage.

(b) The contention here is that, conceding the U. S. S. Kearsage to be a steamship, it was not a passenger vehicle, and that since the U. S. S. Kearsage was not a passenger vehicle, the motor launch cannot be construed as such, and Norris was not a passen-

ger at the time of his death. When this case was before this court as reported in 82 *Ga. App.* 559, the allegations of the amended petition stated that Homer Lee Norris was a part of the 21st Marine Divison and was a member of the ship's company, and the evidence in the case sustained these allegations and the trial court was authorized to find that Norris was lawfully riding on a pass and that his liberty had not ended. The trial court held, in accordance with the allegations in the amended petition, that the liberty pass which had been issued to Norris and the uniform which he wore were required to enable Norris to board the motor launch and that such were legally equivalent to buying a fare. The allegations in this contention having been supported by evidence to the effect that he had a liberty pass or slip and was in uniform constituted him under the pleadings and evidence a passenger under the terms of the policy at the time of his death.

(c) There is involved here a discussion of the liberty slip issued to the deceased. It is contended that the liberty pass was merely a permit to go ashore. This contention is not borne out by the decision of this court reported in 82 *Ga. App.* 559, nor was it borne out by any evidence in the instant case.

(d) This contention refers to an excerpt from the policy as follows: "The policy provides that the steamship must be one being driven or operated at the time by a person regularly employed for that purpose." It is contended in this connection that the coxswain who was operating the particular launch in question was not one who regularly operated this particular launch. This contention appears as somewhat of an afterthought. Such contention seems to be raised here for the first time insofar as the record shows. Be that as it may, the coxswain in question was regularly enlisted, his training was regular, his orders to operate the motor launch in question were regular, he was operating the launch under proper orders and so far as the record shows he was competent. There is no merit in this contention.

(e) Counsel asked for reversal on this point on the ground that at the time of the death of Norris this nation was at war and that for this reason under the provisions of the policy the plaintiff cannot recover. We will not consider this contention at length. We think it is not meritorious. There is no evidence in this record to show that Norris came to his death as a result of

his military service or his death was caused by war or an incident thereto. The principles of the following decisions show beyond question that this contention has no merit: *Kline Car Corp.* v. *Watkins Motor Co.,* 26 *Ga. App.* 338 (106 S. E. 211), *Mutual Life Ins. Co. of New York* v. *Davis,* 79 *Ga. App.* 336 (53 S. E. 2d 571), and *Johnson* v. *Mutual Life Ins. Co.,* 154 *Ga.* 653 (115 S. E. 14).

The court did not err in its judgment to which exceptions are made.

*Judgment affirmed. Townsend and Carlisle, JJ., concur.*